**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 27, 2015**

# In the Court of Appeals of Georgia

A14A1743. PIERRE v. THE STATE.                                DO-063 C

DOYLE, Presiding Judge.

Following a jury trial, Stanley Claude Pierre was convicted of false imprisonment,[1] theft by taking,[2] and three counts of battery.[3] He appeals the denial of his subsequent amended motion for new trial, challenging the sufficiency of the evidence and arguing that he received ineffective assistance of counsel. We affirm for the reasons that follow.

---

[1] OCGA § 16-5-41 (a).

[2] OCGA § 16-8-2.

[3] OCGA § 16-5-23.1 (a). Pierre was charged with three counts of family violence battery, but the jury found him guilty of battery as a lesser included; he was acquitted of aggravated assault, reckless conduct, possession of a dangerous weapon, possession of an illegal weapon, and possession of a firearm during the commission of a crime.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[4] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.[5]

So viewed, the record shows that on December 6, 2011, Officer Jennifer Freshwater was dispatched to Brenda Copeland's home in response to a domestic disturbance call. Copeland met Officer Freshwater in the driveway, and the officer observed that Copeland's shirt was ripped, her mouth was bleeding, and she had a large knot on the back of her head. Once inside the home, Officer Freshwater saw that the bedroom, attached bathroom, and closet were in disarray, and the box spring was exposed "as if someone had either been pushed on it or it had been moved to remove

---

[4] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[5] (Punctuation and footnotes omitted.) *Taylor v. State*, 327 Ga. App. 882, 892 (9) (761 SE2d 426) (2014), quoting *Waller v. State*, 267 Ga. App. 608 (600 SE2d 706) (2004).

2

an item from underneath it or between the two." Copeland told the officer that Pierre came to her home to retrieve some personal items after they recently ended their six-month relationship. Pierre locked Copeland in her bedroom, took her cellphone, and called her employer to say that she was sick and would not be at work that day. When Copeland tried to escape, Pierre pushed her onto the bed, struck her in the mouth and jaw, and told her that "she wasn't going to leave until he f–ked her up." Pierre then struck her in the back of the head with a blunt object, which she believed was a shotgun that he kept in her bedroom between the mattress and the box spring. Copeland lost consciousness, and when she came to, Pierre was standing over her with the gun in his hands. Copeland talked Pierre into allowing her to get ice for her injuries, and she tried to escape through the front door, but he pulled her back into her home and threw her to the ground. Copeland eventually escaped through a side door and ran to a neighbor's home, and the neighbor called 911. Pierre fled, running towards his home. Copeland gave a written statement, and police took photographs of her injuries, which were later shown to the jury.

Police spotted Pierre when they arrived on the scene, but he fled when he saw the police car. Police recovered a loaded sawed-off shotgun in Copeland's next-door neighbor's yard. Pierre was eventually apprehended and charged with false

3

imprisonment, theft by taking, three counts of family violence battery, aggravated assault, reckless conduct, possession of a dangerous weapon, possession of an illegal weapon, and possession of a firearm during the commission of a crime.

Copeland testified at trial, recanting her statement to the police.[6] Copeland testified that on the day of the incident, she returned home and found Pierre in bed with another woman. Copeland told Pierre that she was "going to hurt him," they "tussled," and Pierre "hit [her] by accident" and "elbowed [her] . . . in [the] mouth . . . because [Copeland] was grabbing at him, trying to get at [the other woman]." According to Copeland, she lied to the police and fabricated the allegations against Pierre because she was angry; Pierre did not intentionally strike her nor did he threaten her with a gun.

At the conclusion of the trial, the jury found Pierre guilty of false imprisonment, theft by taking, and three counts of battery (as lesser included offenses of family violence battery); Pierre was acquitted of the remaining charges. This appeal follows the denial of his motion for new trial.

---

[6] Copeland explained that she loved Pierre, and they were still together at the time of the trial.

1. Pierre argues that the evidence was insufficient to support his convictions. We disagree.

Viewed in the light most favorable to the verdict, the evidence shows that Pierre locked Copeland in her room, struck her in the face, hit her in the back of the head with a blunt object, threw her to the floor when she tried to escape, and took her cellphone. Given this evidence, the jury was authorized to find Pierre guilty beyond a reasonable doubt of false imprisonment, theft by taking, and three counts of battery.[7]

The fact that Copeland later disavowed her statements to the police does not require reversal.

> [T]he jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. This is true even in cases in which the victim recants her previous accusation against the defendant. The reason for this rule is that a victim's prior inconsistent statements are admissible as substantive evidence for the

---

[7] See *Jackson*, 443 U. S. at 319 (III); OCGA § 16-5-41 (a) (false imprisonment); OCGA § 16-8-2 (theft by taking); OCGA § 16-5-23.1 (a) (battery).

5

jury's consideration.[8] Thus, a jury is authorized to believe the victim's pre-trial statements rather than her in-court disavowal.[9]

2. Pierre contends that trial counsel was ineffective because he failed to request a jury charge on justification. This enumeration is without merit.

Under *Strickland v. Washington*,[10] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. When reviewing the trial court's decision, this Court will accept the trial court's factual

---

[8] See former OCGA § 24-9-83 (this case was tried in 2012). Georgia's new Evidence Code addresses the introduction of a witness's prior inconsistent statement at OCGA § 24-6-613 (b).

[9] (Punctuation omitted.) *Miller v. State*, 300 Ga. App. 652, 655 (686 SE2d 302) (2009), quoting *Andrews v. State*, 275 Ga. App. 426, 429 (1) (620 SE2d 629) (2005).

[10] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

findings and credibility determinations unless clearly erroneous; however, we review the court's application of legal principles de novo.[11]

[I]f a defendant bases his ineffectiveness claim on trial counsel's failure to request a charge on a certain defense, it is irrelevant whether the trial court would have been required to give such a charge absent a request. Rather, the appropriate inquiry is whether trial counsel provided deficient representation in failing to request the charge, and if so, whether the defendant can meet the prejudice prong of *Strickland v. Washington.* In making the latter determination, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial.[12]

"Justification is an affirmative defense whereby the defendant admits acting with the intent to inflict an injury, but claims that he did so while in reasonable fear of suffering immediate serious harm to himself or another."[13] Here, Pierre did not

---

[11] (Punctuation omitted.) *Williams v. State*, 326 Ga. App. 665, 669-670 (3) (757 SE2d 267) (2014), quoting *Russell v. State*, 319 Ga. App. 472, 476 (3) (735 SE2d 797) (2012).

[12] *Bush v. State*, 271 Ga. 156, 157 (2) (517 SE2d 509) (1999), citing *Lucas v. State*, 265 Ga. 514, 516-517 (3) (458 SE2d 103) (1995).

[13] *Alston v. State*, 277 Ga. App. 117 (1) (a) (625 SE2d 475) (2005). See also *McPetrie v. State*, 263 Ga. App. 85, 88 (2) (587 SE2d 233) (2003) ("[J]ustification is an affirmative defense, and as a general rule, a defendant must admit the crime before he can raise that defense.") (punctuation omitted).

admit committing any of the offenses with which he was charged.[14] And even assuming that a witness's testimony can provide the basis for a justification defense in the absence of an admission by the defendant, Copeland testified that Pierre accidentally struck her. Because the evidence did not support a charge on justification, trial counsel's failure to request one does not constitute ineffective assistance.[15]

*Judgment affirmed. Miller and Dillard, JJ., concur*.

---

[14] Pierre did not testify at trial, and neither opening nor closing statements were included in the appellate record.

[15] See *Branton v. State*, 258 Ga. App. 221, 225 (4) (573 SE2d 475) (2002); *Porter v. State*, 272 Ga. 533, 534-535 (3) (531 SE2d 97) (2000) (justification defense requires "reasonabl[e] belie[f] that such threat or force is necessary to defend himself or a third person against such other's *imminent* use of unlawful force") (emphasis supplied).