**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 6, 2015**

# In the Court of Appeals of Georgia

A15A0225. LOPEZ v. THE STATE.

BARNES, Presiding Judge.

Following jury trial, Toni Antonio Lopez was convicted of armed robbery, burglary and six counts of false imprisonment. He appeals from the denial of his motion for new trial, contending that the evidence was insufficient and that his trial counsel was ineffective for failing to raise an affirmative defense. Following our review, we affirm.

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility, but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This same standard applies to our review of the trial court's denial of [Lopez's] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." (Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

So viewed, the evidence shows that on February 2, 2007, police were dispatched at approximately 10:30 p.m. to a reported home invasion. One of the victims testified that he had heard a knock on the door, peered through the blinds, and saw two people dressed in black, one with his head covered. The victim, who was the homeowner's co-worker, lived at the residence with the homeowner, the homeowner's pregnant wife, her brother, and the homeowners' two children. When the co-worker told the wife about the men, she became frightened and called the police. She also called her husband, who was on his way home from work, to tell him about the men outside their home. The men outside attempted to open the door, and the wife shut herself inside her bedroom with her seven-year-old daughter.

When the homeowner arrived home from work, two men approached him and pointed a gun at his head. They told him to give them the "money and the drugs," and told him to unlock the door to the home or that they would kill him. The men took the homeowner into the kitchen, threw him on the floor, and again demanded money and drugs, while holding a gun at his head. The wife had heard her husband's cell phone ring inside the home when she called him, so she opened her bedroom door and saw

2

that two men were inside with her husband, and one of the men had a gun pointed at her husband's head. The men took the homeowner and his co-worker into the bedroom, made them kneel on the floor, and tied their hands with shoelaces. The robbers then took the homeowner and co-worker back into the kitchen and again demanded money. The homeowner noticed that two more robbers had come into the home, and had tied up his brother-in-law and his visiting friend in another bedroom.[1]

A short time later, the homeowner saw lights outside the home, and the robbers began to panic and said that "[t]here are people outside." As the robbers ran and attempted to escape, the homeowner untied himself and opened the door for the police. As one of the officers entered the home, he pursued a robber running toward the back of the house, and as he gave chase, a masked man came into the hallway. The officer pushed the masked man to the ground, and continued after the fleeing robber. After a struggle, a second officer secured the masked man who had been pushed to the ground, who was later identified as Lopez.

One of the robbers escaped, but police arrested Lopez and two other men in the house, in addition to another man who was discovered nearby and suspected of driving the get-away car. The escaped robber was later identified and arrested on the

---

[1] The brother-in-law and his visitor did not testify at trial.

3

same charges. Lopez told police that he was not involved in the home invasion, but that, instead, he had gone to the victims' home to buy drugs and had been forced into the home by several masked men.

Lopez and his four co-defendants were indicted on six counts of kidnapping, two counts of aggravated assault, one count each of armed robbery and burglary. At trial, one of the co-defendants testified that they had gone to the victims' home to rob them of drugs and money. He also testified that Lopez was with the co-defendants at an apartment earlier when they planned the robbery, and testified that, while Lopez did not carry a gun during the home invasion, he was inside the home and involved with the criminal enterprise. The State also introduced a letter that the co-defendant had written earlier in which he said that Lopez had forced him to participate in the robbery as payment for living with him.

1. Lopez contends that the evidence establishes only his mere presence at the home and was not sufficient to sustain his convictions for the crimes charged. However, the evidence, direct and circumstantial, was sufficient to show more than Lopez's mere presence at the crime. Although the witnesses could not identify the masked men's faces, there were clearly four men who entered the home as part of the home invasion. One man escaped, and three, including Lopez, were arrested at the

4

scene. Likewise, all of the male victims inside the home were tied up, but Lopez was not so constrained when he was arrested. One officer identified Lopez as one of the men he arrested inside the house and testified that Lopez was wearing a mask when the officer first saw him. A mask was discovered near Lopez when he was arrested. Further, a co-defendant testified that Lopez was with the group when they planned and carried out the crime. "'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (Citation omitted.) *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009).

When viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Lopez guilty beyond a reasonable doubt of the crimes for which he was convicted and sentenced under the standard of *Jackson v. Virginia*, 443 U.S. at 319.

2. Lopez also contends that his trial counsel was ineffective for failing to pursue his affirmative defense of coercion. We do not agree.

> To prevail on a claim of ineffective assistance of counsel, a defendant has the burden to prove that his counsel's actions fell below an objective standard of reasonableness and that, but for the alleged ineffective act, there is a reasonable probability that the result of the proceeding would have been different.

5

(Punctuation and footnotes omitted.) *Columbus v. State*, 270 Ga. 658, 660 (2) (a) (513 SE2d 498) (1999).

Lopez claims his attorney was ineffective for failing to put forward his affirmative defense of coercion. Pursuant to OCGA § 16-3-26:

> A person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury.

Lopez did not allege that he *participated* in the crime out of fear of death or great bodily harm, however, but instead told police that he was merely present to buy drugs, and had not participated in the crime. See *Burnette v. State*, 291 Ga. App. 504, 510-511 (2) (662 SE2d 272) (2008) ("[Because] [a]n affirmative defense is one that admits the doing of the act charged but seeks to justify, excuse, or mitigate it[,] [t]he defendant must admit the crime before [he] can raise the defense.") (footnotes omitted). "A trial attorney's decision to pursue a specific defense is reasonable if it is supported by the evidence in the case." (Citation omitted.) *Allen v. State*, 293 Ga. 626, 628 (2) (c) (748 SE2d 881) (2013).

Here, trial counsel made an informed strategic choice not to pursue a defense that did not comport with the evidence or Lopez's own version of events, and thus

Lopez has failed to satisfy the deficiency prong of the *Strickland* test.[2] See *Martinez v. State*, 284 Ga. 138, 141-142 (4) (663 SE2d 675) (2008) (decision not to pursue affirmative defense of insanity based upon post-traumatic stress disorder was a reasonable strategic one, where, among other things, defendant was not prepared to admit that he committed the underlying violent act, and defense counsel believed that jury would not accept such a defense as a plausible explanation for why defendant was violent).

Accordingly, the trial court did not err in denying Lopez's ineffective assistance claim.

*Judgment affirmed. Ray and McMillian, JJ., concur.*

---

[2] The trial court charged the jury that it should acquit Lopez if it finds that he was only merely present during the commission of the crimes or only merely associated with those who actually committed the crimes.